## Carlisle *v.* Welsh et al., Appellants.

*Municipalities—Main sewers—Construction—Cost—Assessment of property owners—Ordinances.*

Where it was the purpose and intention of a borough council, as manifested in the several ordinances providing for the construction of a sewerage system, that the main outfall sewer of the

borough should be constructed solely at public expense, no part of the cost thereof can be assessed against abutting property owners.

To collect the cost of such improvement from the abutting property owners, it is a basic and fundamental prerequisite that the borough should signify its intention to make such assessment.

Ordinances for the assessment of the cost of lateral sewers in a given district, and for the main and trunk sewers leading to the main outfall sewer, which have no reference to the latter improvement, are not authority for assessments on properties abutting on the outfall sewer. The basic and fundamental legislation necessary for such assessment being lacking, it cannot be sustained.

Argued March 8, 1920. Appeal, No. 6, March T., 1920, by defendants, from judgment of C. P. Cumberland Co., Nov. T., 1914, No. 34, for plaintiff in suit tried by the court, without a jury, in the case of Borough of Carlisle v. C. A. Welsh Estate and Margaret Spencer. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Scire facias sur municipal lien. Before SADLER, P. J., without a jury.

The facts are stated in the opinion of the Superior Court.

The court entered judgment in favor of the plaintiff for $212.40. Defendants appealed.

*Errors assigned* were dismissing exceptions to various findings of fact and conclusions of law and the decree of the court.

*J. W. Wetzel,* for appellants.—The borough could not collect from the abutting property owners without express municipal action by ordinance: Scranton Sewer, 213 Pa. 4.

*E. M. Biddle, Jr.,* and with him *Thomas E. Vale,* Borough Solicitor, for appellee, cited: Moore v. Moore, 23 Pa. Superior Ct. 73; Tarentum Boro. v. Moorhead, 26 Pa. Superior Ct. 273; Shiloh Street, 165 Pa. 386;

255, (1920).] Arguments—Opinion of the Court.
Deer v. Sheraden Borough, 220 Pa. 307; Hamilton Avenue, 48 Pa. Superior Ct. 156.

OPINION BY KELLER, J., April 24, 1920:

The discussion contained in the opinion of the learned judge below entering judgment, is a scholarly exposition of the law of this State, based upon his construction of the ordinances involved and fully warrants the judgment entered in the case, if that construction be the correct one. It is predicated on the finding or conclusion that the borough had not provided by ordinance that the entire main outfall sewer was to be a public charge, constructed solely at public expense. If this finding is erroneous, the judge impliedly admits that the borough's claim cannot be upheld, for he says: "Can the sum fixed be collected? Clearly it can under the ruling in Park Avenue Sewers, 169 Pa. 433, unless the municipality has provided that the entire main line be a public charge. Both the Act of May 15, 1889, P. L. 220, Section 2, and the Act of June 4, 1901, P. L. 364, section 5, regulating assessments provided that the entire constructions might be at public expense."

We have considered the ordinances with the care which the opinion of the court below merits and are not able to agree with the learned judge that "There is nothing to indicate that the system, or the main sewer which was a part thereof, was intended to be one constructed solely at public expense"; on the contrary, we are satisfied that it was the purpose and intention of the borough council, as manifested in the several ordinances, that the main outfall sewer should be constructed solely at public expense and that no part of the cost thereof was to be assessed against abutting property owners, and as the sewer constructed in the street on which the defendant's property abuts is admittedly the main outfall sewer, it follows that no part of its cost can be recovered by way of assessment against the property of the appellant. Nor is this conclusion affected by the fact that the bor-

ough may have ratified the change of location of the main outfall sewer, as directed by the chairman of the street committee, with the approval of the engineer, from its line through appellant's private property, as originally planned, to East Louther street and a private alley, so as to form two sides of a right-angled triangle instead of the hypotenuse as originally authorized, provided the original purpose of the borough to pay the entire cost of such main outfall sewer was not changed by ordinance. The change might be ratified without formal ordinance so as to make the borough liable to the contractor for the cost thereof or to the owner of the private alley for the injury done her property, but it would not subject the abutting property owner to assessment for benefits unless the borough formally signified its intention to make abutting property owners contribute to the cost of the main outfall sewer to the extent that they were benefited by such construction. That is a basic and fundamental prerequisite to the levying of any assessment in the premises: Scranton Sewers, 213 Pa. 4; Hershberger v. Pittsburgh, 115 Pa. 78; Morewood Avenue, 159 Pa. 39; Western Penna. Ry. Co. v. Allegheny, 92 Pa. 100; Harper's App., 109 Pa. 9; Swissvale v. Dickson, 68 Pa. Superior Ct. 160. None of the authorities cited by the appellee or the court below go so far as to hold that where the municipality has formally adopted a plan of improvement to be paid for at public expense, it can, by any acts of ratification short of a formal ordinance, be changed so as to assess the cost against abutting property owners.

The construction of the main outfall sewer was authorized by ordinance of September 21, 1910, and in the same ordinance provision for the payment thereof was made by a proposed increase of indebtedness which was submitted to and authorized by the electors. On this point the ordinance reads: "And, whereas it is desirable that certain portions of said system be installed at once, and whereas......the estimated cost of that portion of

the sewerage system which it is proposed to build is for Main Sewer $15,000 and for Disposal Plant and right of way $35,000, in all the sum of $50,000 which cannot be assessed on the foot front plan......Therefore, Be it enacted etc.,......That......the corporate authorities of the Borough of Carlisle, Pennsylvania, hereby signify their desire to increase the bonded indebtedness of the said Borough in the sum of $99,000 or such portion thereof as shall be approved by the electors......said sum to be expended as follows: For Main Sewer for sewerage system $15,000—For Disposal Plant and right of way $35,000, etc.......That the proposed increase of the bonded indebtedness of the Borough of Carlisle shall be submitted to the electors of said Borough in the form of three separate propositions, to wit: No. I. Shall the bonded indebtedness of the Borough of Carlisle be increased in the sum of $50,000 ($15,000 to be expended for main sewer for sewerage system and $35,000 for Disposal Plant and right of way?)......That within the corporate limits of the Borough the main sewer as provided in the plans of T. Chalkley Hatton, approved by the State board of health be installed in accordance with the act of assembly approved May 13, 1889, as amended by the Act of Assembly of April 23, 1907."

The ordinance contains not one word indicating that any part of the cost of this main sewer was to be assessed against abutting property owners, or that the loan of $15,000 was to cover the excess cost over benefits or to meet deficiencies that might arise in case the property fronting on the improvement would be but slightly benefited relatively and the borough be obliged to pay a considerable part of the costs and expenses of the improvement, as In re Beechwood Avenue, 194 Pa. 86. The entire contract price of the main outfall sewer as originally planned, was $13,098.03, or nearly two thousand dollars less than the authorized loan, and there is nothing in the ordinance to indicate that any part of the items authorized by the ordinance were to be paid for or con-

tributed to by anybody but the borough itself, out of its public funds, and it is joined in one item, as submitted to the electors, with the disposal plant the entire cost of which was necessarily to be paid for by the borough, without assessment of benefits.

The sewerage system, apart from the main outfall sewer, was authorized by an entirely different ordinance, that of April 16, 1913; it was confined to such part of the approved sewer system as was contained within the boundaries of East, South, College and North streets, all west of the Letort Spring, "with such connections with trunk or outfall sewers and the construction of such trunk sewer or sewers as may be necessary for its proper operation," and did not include within it any portion of the territory through which the main outfall sewer was located or laid which is east of the Letort Spring. It described the course of the lateral sewers in detail and specially provided for the building of several main or trunk sewers leading from this territory to the main outfall sewer. It also provided, "That the cost of the said lateral sewers and accessories thereto be paid from the proceeds of assessments levied against the abutting properties upon the foot-front rule and from other funds available therefor." The contract for these lateral sewers and connections was entirely separate and distinct from the contract for the main outfall sewer and with a different contractor.

The ordinance relied on to impose liability on the appellant is the ordinance of December 31, 1913. This ordinance provides for the assessment according to lineal-foot frontage of the cost of certain sewers thus constructed, but a careful reading of it shows that it is intended to be limited to the lateral and main or trunk sewers authorized by the ordinance of April 16, 1913, for it reads: "Whereas the said Town Council has had constructed a portion of the said system, viz: bounded by East, North, College and South streets and in territory immediately adjacent thereto and the main sewers and

authorized extensions of sewers necessary to carry off the flow of sewerage through the lateral sewers outside of and throughout this portion to the main outfall sewer; and Whereas, The said Town Council has caused to be prepared plans and measurements showing the sub-divisions of properties within the portion of the borough in which sewers have been constructed and in which sewers are being constructed and are about completed since December 1, 1913, as aforesaid, such plans and measurements showing the lineal feet of each property abutting upon the streets and alleys located within the aforesaid portion." ......

And in section X—"All such amounts [that is, paid on account of assessments] thus received, shall form a sinking fund and shall only be paid out, upon order of the borough council, for the purpose of paying the indebtedness incurred in building the lateral sewerage system of the Borough of Carlisle and for paying the interest upon such indebtedness as the same may become due."

The ordinances indicate a fixed purpose on the part of the borough council to do two separate and distinct things: (1) to construct a main outfall sewer and disposal plant to be paid for wholly out of the general borough funds augmented by loans for those purposes; (2) to construct a system of lateral sewers within the district bounded by East, North, College and South streets, with necessary main or trunk sewers leading to the main outfall sewer, to be paid for by assessments levied against abutting properties on the foot frontage rule. This they had a right to do and their action in the premises was conclusive: Oil City v. Oil City Boiler Works, 152 Pa. 348.

The present suit is an attempt to collect by municipal claim from a property abutting on the main outfall sewer a portion of the cost of construction of that sewer; it is not authorized by any ordinance of the borough and is contrary to the adopted plan by which such payment

Opinion of the Court.     [74 Pa. Superior Ct.

is to be made out of general borough funds. The ordinances for the assessment of the cost of the lateral sewers in the district bounded by the four streets named above and the main and trunk sewers leading to the main outfall sewer have no reference to the main outfall sewer itself and are not authority for assessments on properties abutting on that sewer, and the basic or fundamental legislation necessary for such assessment being lacking, the assessment cannot be sustained.

The seventh, tenth and eleventh assignments of error are sustained, the judgment is reversed and is now entered for the defendant.

HENDERSON and LINN, JJ., dissent.